IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMY ANDERTON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | Civil Action No. 3:23-CV-2696-D |
| | § | |
| DALLAS INDEPENDENT SCHOOL | § | |
| DISTRICT, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION
AND ORDER

In this action, plaintiff Amy Anderton, Ph.D. ("Dr. Anderton") sues her employer, Dallas Independent School District ("DISD"), for discrimination under several federal[1] antidiscrimination statutes, and under 42 U.S.C. § 1983 for alleged violations of her Fourteenth Amendment procedural and substantive due process rights and her First Amendment rights. DISD moves to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim on which relief can be granted. For the reasons that follow, the court grants the motion but also grants Dr. Anderton leave to replead.

---

[1] Dr. Anderton's amended complaint states that she is bringing "federal- and state-law discrimination claims," but does not cite a state-law antidiscrimination statute. Nor does her response to DISD's motion to dismiss mention any state-law claims. The court will therefore treat the amended complaint as alleging only federal-law claims.

I

Dr. Anderton is a 60-year-old heterosexual, Caucasian woman whom DISD hired as a Curriculum Director for World Languages.[2]  In her role as Curriculum Director, Dr. Anderton oversaw foreign language teachers, implemented new foreign language programs and courses, and supported students and teachers obtaining seals of biliteracy and bilingualism.

Dr. Anderton alleges that, beginning in early 2023, she was discriminated against based on her race, sex,[3] and age.  Dr. Lisa Whitaker ("Dr. Whitaker"), an African-American colleague, "had a major role in overseeing" Dr. Anderton's move to a new building.  Am. Compl. (ECF No. 17) at 8, ¶ 4.10.  Dr. Whitaker "continually thwarted and misled" Dr. Anderton regarding the move; Dr. Anderton's team was placed in "inferior and inconvenient

---

[2]The court recounts the background facts favorably to Dr. Anderton as the nonmovant. In deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004) (addressing Rule 12(b)(6) standard)).

[3]This court refers to Dr. Anderton's claim for discrimination based on her heterosexual sexual orientation as a claim for discrimination based on her sex.  Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*., prohibits employers from "discriminat[ing]" against any individual with respect to employment "because of such individual's . . . sex."  42 U.S.C. § 2000e-2(a)(1).  Discrimination on the basis of sexual orientation has been held to be a form of sex discrimination under Title VII.  *See Bostock v. Clayton County*, 590 U.S. 644, 683 (2020).  Accordingly, "a plaintiff who alleges [such] discrimination is entitled to the same benefits—but also subject to the same burdens—as any other plaintiff who claims sex discrimination under Title VII."  *Olivarez v. T-mobile USA, Inc.*, 997 F.3d 595, 598 (5th Cir. 2021).

offices, denied necessary furniture, and lied to about [] furniture [orders]." *Id.* at 2, ¶ 3.3. Arlena Gaynor ("Gaynor"), Dr. Anderton's African-American boss, and Michele Broughton ("Broughton"), Gaynor's African-American boss, "permitted Dr. Whitaker to separate Dr. Anderton's team, refuse [Dr. Anderton's] reasonable requests [], and [] harass and make Dr. Anderton's job as difficult as possible." *Id.* at 8, ¶ 4.10. Gaynor also excluded Dr. Anderton and another Caucasian employee from emails and directors meetings, which caused her to be rushed or late on assignments. Gaynor included on emails only those who were younger than Dr. Anderton.

In July 2023 Dr. Anderton was assigned to a new boss, Dr. Elena Hill ("Dr. Hill"), who is also African-American. According to the amended complaint, Dr. Hill refused to "counter Dr. Whitaker's actions" and "ordered Dr. Anderton to apologize to Dr. Whitaker." *Id.* at 8, ¶ 4.11. Dr. Hill also disciplined Dr. Anderton for contacting the chief of operations regarding her team's move, although Dr. Anderton believed she was emailing a fellow director, not a chief.

In September 2023 DISD placed Dr. Anderton on administrative leave. While on leave, Dr. Hill posted a photograph on X (previously Twitter) with the following caption: "Dallas ISD offers students the opportunity to learn and study languages of the world! It was great to connect with the World Languages Team this morning to align our strategies to our goals. #AcademicServices #DallasISD #TeamOfThree #SmallButMighty." *Id.* at 6, ¶ 4.4. Dr. Anderton alleges that Dr. Hill's hashtag—#TeamofThree—demonstrates that DISD had decided to terminate Dr. Anderton before any investigation concluded. The persons in the

photograph are also younger than Dr. Anderton.

On November 7, 2023 DISD's Professional Standards Office investigated Dr. Anderton and drafted an investigative report ("PSO Report") that found that Dr. Anderton had engaged in misconduct. According to the PSO Report, in September 2023 Dr. Anderton improperly met with two students while visiting district campuses. The two students with whom Dr. Anderton visited were brothers and in foster care because of an ongoing Child Protective Services ("CPS") investigation. Dr. Anderton knew the two students' parents and alleges that she met with them because she was "concerned about them on a personal level" and for professional reasons. *Id.* at 4, ¶ 3.7. The students were non-native English speakers, previously homeschooled, and new to the district. On November 17, 2023 DISD notified Dr. Anderton of her termination. In late November, DISD sent her a copy of the PSO Report.

On December 12, 2023 DISD terminated Dr. Anderton and reported her misconduct to the State Board for Educator Certification. An "under investigation" flag now appears on Dr. Anderton's teaching certificate.

Dr. Anderton then filed this lawsuit, alleging race, sex, and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*; and asserting claims under 42 U.S.C. § 1983 for alleged violations of her Fourteenth Amendment procedural and substantive due process rights and her First Amendment rights. DISD moves to dismiss under Rule 12(b)(6) for failure to state a claim. The court is deciding the motion on the briefs, without oral argument.

II

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] complaint by 'accept[ing] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (second alteration in original) (internal quotation marks omitted) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]").  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.

III

DISD maintains that Dr. Anderton has failed to state discrimination claim on based on race and sex, in violation of Title VII, and based on age, in violation of the ADEA.

A

Title VII prohibits discrimination on the basis of "race, color, religion, sex, or national origin[.]"  42 U.S.C. § 2000e-2(a)(1).  Title VII, *inter alia*, holds employers liable for discrimination based on disparate treatment.  *See Ricci v. DeStafano*, 557 U.S. 557, 577 (2009); *Griggs v. Duke Power Co.*, 401 U.S. 424, 431 (1971).  Disparate treatment occurs "where an employer has 'treated [a] particular person less favorably than others because of' a protected trait."  *Ricci*, 557 U.S. at 577 (alteration in original) (quoting *Watson v. Fort Worth Bank & Tr.*, 487 U.S. 977, 985-86 (1988)).  To establish a disparate-treatment claim, a plaintiff must ultimately prove "(1) an 'adverse employment action,' (2) taken against [her] '*because of* her protected status.'"  *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (emphasis in original) (citation omitted).  The second element requires a plaintiff to prove "that the defendant had a discriminatory intent or motive."  *Ricci*, 557 U.S. at 577 (citation omitted).

A plaintiff can establish an employer's discriminatory intent or motive through direct or circumstantial evidence.  *See Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 329 (5th Cir. 1994).  Where, as here, the plaintiff alleges discrimination under Title VII based on

circumstantial evidence, the court can use the *McDonnell Douglas*[4] framework as a helpful reference when determining whether the plaintiff has plausibly alleged the ultimate elements of her claim.[5]  *See Scott v. U.S. Bank Nat'l Ass'n*, 16 F.4th 1204, 1210 (5th Cir. 2021) (per curiam) ("[W]e have recognized that *McDonnell Douglas* may still be used to frame the motion-to-dismiss inquiry.").  Under this framework, a plaintiff must adequately plead that (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) others similarly situated were treated more favorably.  *See Harrison v. Brookhaven Sch. Dist.*, 82 F.4th 427, 429 (5th Cir. 2023) (per curiam).  The fourth element requires that the plaintiff identify a comparator by alleging facts

---

[4]*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[5]The familiar *McDonnell Douglas* standard for evaluating employment discrimination claims is an evidentiary framework, not a pleading standard.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002).  Accordingly, "a plaintiff need not make out a prima facie case of discrimination in order to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim."  *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (citing *Swierkiewicz*, 534 U.S. at 510-12); *see also, e.g.*, *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016) ("Although Chhim did not have to submit evidence to establish a prima facie case of discrimination at this stage, he had to plead sufficient facts on all of the ultimate elements of a disparate treatment claim to make his case plausible.").  To survive DISD's motion to dismiss, however, Dr. Anderton must plausibly plead the ultimate elements of her Title VII claims.  *See Chhim*, 836 F.3d at 470.  And since *McDonnell Douglas* will govern when a plaintiff relies on indirect evidence of discrimination, it can be helpful to reference that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of her claim.  *See Cicalese*, 924 F.3d at 767 (Title VII case) ("If a plaintiff's disparate treatment claim depends on circumstantial evidence, [she] will 'ultimately have to show' that [she] can satisfy the *McDonnell Douglas* framework.  In such cases, we have said that it can be 'helpful to reference' that framework when the court is determining whether a plaintiff has plausibly alleged the ultimate elements of the disparate treatment claim." (quoting *Chhim*, 836 F.3d at 470-71)).

sufficient to demonstrate that she "was treated less favorably than others outside of [her] protected class." *Olivarez*, 997 F.3d at 600 (emphasis omitted). But "a district court errs in dismissing a disparate treatment claim strictly because a complaint does not sufficiently identify a comparator under *McDonnell Douglas*, at least where there are other specific incidents alleged that would permit the inference that an adverse employment action was taken because of a plaintiff's protected status." *Jenkins v. City of Dallas*, ___ F.Supp.3d ___, 2024 WL 583490, at *5 (N.D. Tex. Feb. 13, 2024) (Boyle, J.).

B

The court turns first to Dr. Anderton's race-based discrimination claim under Title VII.

Although Dr. Anderton does not label her Title VII discrimination claims, it is apparent that she seeks to hold DISD liable under a theory of disparate treatment. Accordingly, to survive DISD's motion to dismiss, Dr. Anderton must plead sufficient facts for the court to draw the reasonable inference that there was "(1) an 'adverse employment action,' (2) taken against [her] '*because of* her protected status.'" *Cicalese*, 924 F.3d at 766 (emphasis in original). The parties do not dispute that Dr. Anderton suffered an adverse employment action when she was terminated on December 12, 2023. But DISD maintains that Dr. Anderton's race-based discrimination claim under Title VII fails because she does not allege sufficient facts to demonstrate that she was terminated because of her Caucasian race. In particular, DISD posits that the amended complaint is deficient because it does not allege any facts that would enable the court to draw the reasonable inference that she was

treated differently from similarly-situated individuals outside of her protected class or that the actions of Dr. Whitaker, Gaynor, Broughton, or Dr. Hill caused Dr. Anderton's termination.

The amended complaint alleges that (1) Dr. Whitaker, her African-American colleague, "continually thwarted and misled" Dr. Anderton regarding her team's move to a new building; (2) Gaynor and Broughton, her former African-American supervisors, "permitted Dr. Whitaker to separate [her] team, refuse [her] reasonable requests [], and [] harass and make [her] job as difficult as possible"; (3) Dr. Hill, her new African-American supervisor, "refused to do anything to help [her] counter Dr. Whitaker's actions, and in fact, ordered [her] to apologize to Dr. Whitaker"; (4) Dr. Hill also disciplined her for contacting the chief of operations regarding her team's move "based on race"; and (5) Gaynor excluded her and another Caucasian employee from emails and directors meetings. Am. Compl. (ECF No. 17) at 8, ¶¶ 4.10-11. These factual allegations are insufficient to nudge her race-based discrimination claim "across the line from conceivable to plausible." *Cicalese*, 924 F.3d at 768 (quoting *Twombly*, 550 U.S. at 547). The amended complaint therefore fails to plead the existence of some potentially similarly-situated employee outside Dr. Anderton's protected class.

First, the amended complaint does not identify a comparator. It refers to Dr. Whitaker as a "colleague" and alleges that "Dr. Hill's favoritism toward Dr. Whitaker . . . [was] discrimination against [Dr. Anderton] based on race." Am. Compl. (ECF No. 17) at 8, ¶ 4.11. Next, the amended complaint fails to make clear whether Dr. Whitaker worked under

the same supervisors or performed the same or similar tasks as Dr. Anderton.  On the contrary, it alleges that Dr. Whitaker had "a major role in overseeing the move" and some authority to "refuse [Dr. Anderton's] reasonable requests" regarding that move, indicating that Dr. Whitaker may have performed different tasks than she.  The court is therefore unable to draw a reasonable inference of race-based animus by DISD based on the factual allegations regarding how Dr. Anderton's supervisors treated Dr. Whitaker compared to Dr. Anderton.

The amended complaint also fails to allege any other specific incidents that indicate that Dr. Anderton's supervisors were motivated by race-based animus, or that any of her supervisors was involved in DISD's decision to terminate her.  Regarding Dr. Hill's decision to discipline her for contacting the chief of operations regarding her team's move, the amended complaint makes the conclusory assertion that Dr. Hill disciplined Dr. Anderton "based on race," Am. Compl. (ECF No. 17) at 8, ¶ 4.11, and fails to allege any facts indicating that Dr. Hill declined to discipline another employee outside her protected class for the same or similar conduct.  *See Iqbal*, 556 U.S. at 678 (recognizing that "mere conclusory assertions" do not support threadbare allegations).  Moreover, any attempt to plead discriminatory motive by alleging that Gaynor excluded another Caucasian employee from emails and directors meetings does not raise Dr. Anderton's "right to relief above the speculative level" because Dr. Anderton and the Caucasian employee are members of the same protected class. *Twombly*, 550 U.S. at 555.  The amended complaint also fails to allege that any of Dr. Anderton's supervisors was involved in DISD's investigation or decision to

terminate her.

Because the factual allegations of the amended complaint do not support the reasonable inference that DISD terminated Dr. Anderton her because she is Caucasian, the court concludes that she has failed to plead a plausible claim for relief. Accordingly, the court grants DISD's motion to dismiss Dr. Anderton's race-based discrimination claim under Title VII.

C

The court now considers Dr. Anderton's sex-based discrimination claim under Title VII.

The amended complaint alleges that Dr. Anderton is heterosexual and that "her boss and boss's boss" are homosexual. Am. Compl. (ECF No. 17) at 9, ¶ 4.14. It is unclear to whom the amended complaint is referring when it alleges that Dr. Anderton "boss and boss's boss" are homosexual, because it asserts that she had different bosses at different times and fails to specify any specific supervisor's sexual orientation. Nevertheless, even taking the allegations of the amended complaint as true, the fact that her supervisors displayed some animosity toward her and that her supervisors were homosexual does not raise her "right to relief above a speculative level." *Twombly*, 550 U.S. at 555.

Because Dr. Anderton's factual allegations do not support a reasonable inference that DISD terminated her because of her heterosexual sexual orientation, the court concludes that she has failed to state a plausible claim for relief. Accordingly, the court grants DISD's motion to dismiss Dr. Anderton's sex-based discrimination claim under Title VII.

D

Dr. Anderton also alleges an ADEA-based claim for age discrimination.

The ADEA prohibits an employer from "discharg[ing] any individual or otherwise discriminat[ing] against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age[.]"  29 U.S.C. § 623(a)(1). "To establish an ADEA claim, '[a] plaintiff must prove by a preponderance of the evidence (which may be direct or circumstantial), that age was the "but-for" cause of the challenged employer decision.'"  *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).   Where, as here, a plaintiff alleges discrimination under the ADEA based on circumstantial evidence, the court can use the *McDonnell Douglas* framework as a helpful reference when determining whether a plaintiff has plausibly alleged the ultimate elements of her claim.  *See Norsworthy v. Hous. Indep. Sch. Dist.*, 70 F.4th 332, 336 (5th Cir. 2023)

Under *McDonnell Douglas* a plaintiff alleging only circumstantial evidence must establish a prima facie case of age discrimination by showing that (1) she was within the protected class (*i.e.*, she was over 40 years old) at the time of the challenged action; (2) she was qualified for the position; (3) the defendant discharged, refused to hire, or otherwise discriminated against her; and (4) (i) she was replaced by someone outside the protected class, (ii) she was replaced by someone younger, or (iii) the discharge, refusal to hire, or other discrimination was otherwise because of her age.  *See Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321-22 (5th Cir. 2021).   Although a complaint need not contain facts

-12-

establishing a prima facie case, the plaintiff must plead more than an "unadorned, the-defendant-unlawfully-harmed-me accusation." *Norsworthy*, 70 F.4th at 336 (quoting *Iqbal*, 556 U.S. at 678).

The amended complaint alleges that: (1) Dr. Anderton's three direct reports were younger than she; (2) her supervisors, Gaynor and Dr. Hill, were "at least five years" younger than she; (3) Gaynor excluded her from emails and directors meetings; (4) Dr. Hill posted a photograph with people younger than she while she was on administrative leave and the photograph indicated that DISD had decided to terminate her before any investigation concluded; (5) DISD employs 26 directors in Academic Services and all but one are younger than she; and (6) DISD employs 171 directors in total, and only 17 are older than Dr. Anderton.

The amended complaint fails to allege sufficient facts for the court to draw the reasonable inference that Dr. Anderton was terminated based on her age. It merely alleges that Gaynor and Dr. Hill displayed some animosity toward her and that Gaynor and Dr. Hill were at least five years younger than she. But Dr. Anderton does not plead any facts indicating that Gaynor's or Dr. Hill's speech or conduct toward her was based on an age-related animus, or that Gaynor or Dr. Hill was involved in DISD's investigation or decision to terminate her. *See McIntyre v. Tyson Fresh Meats, Inc.*, 2021 WL 489224, at *1-2 (N.D. Tex. Feb. 10, 2021) (Kacsmaryk, J.) (dismissing ADEA claim in part because plaintiff failed to allege whether her supervisor—who stated that plaintiff was getting older—had authority over her employment decision or had made the ultimate termination decision). Moreover,

the other allegations of the amended complaint that indicate that DISD employs mostly younger directors do not raise a reasonable inference of age discrimination because they fail to allege how much younger the directors are. *See Estell v. Strive, Inc.*, 2016 WL 3746364, at *3 (E.D. La. July 13, 2016) (dismissing ADEA claim because plaintiff did not explain who the younger persons were or what involvement they had in her employer's decision).

Because Dr. Anderton's factual allegations do not enable the court to draw the reasonable inference that DISD terminated her because of her age, the court concludes that she has failed to state a plausible claim for relief. Accordingly, the court grants DISD's motion to dismiss Dr. Anderton's ADEA-based claim for age discrimination.

IV

The court now considers Dr. Anderton's claims brought under 42 U.S.C. § 1983 for violations of her constitutional rights.

A

Section 1983 provides a private right of action to redress a violation of a federal constitutional or statutory right by those acting under color of state law. *See Manuel v. City of Joliet*, 580 U.S. 357, 361 (2017). "Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (internal quotation marks and citation omitted).

To state a claim under § 1983, a plaintiff must allege a violation of a federal constitutional or statutory right and demonstrate that the alleged deprivation was committed by a person acting under color of state law. *See, e.g., Leffall v. Dall. Indep. Sch. Dist.*, 28

F.3d 521, 525 (5th Cir. 1994).  To assert a claim against a local government entity like a

school district, a plaintiff must also allege that (1) an official policy or custom was a cause

in fact of the deprivation of rights inflicted; (2) a final policymaker approved or sanctioned

the official policy or custom; and (3) the official policy or custom is a "moving force" behind

the deprivation.  *See Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978).

These three elements "are necessary to distinguish individual violations perpetrated by local

government employees from those that can be fairly identified as actions of the government

itself." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

B

The court first turns to whether Dr. Anderton has alleged a deprivation of a federal

constitutional right.  *See Peterson v. City of Fort Worth*, 588 F.3d 838, 844 (5th Cir. 2009)

(addressing "threshold issue" of whether defendants violated plaintiff's constitutional rights

before addressing the issue of municipal liability).

Dr. Anderton alleges that DISD violated her Fourteenth Amendment procedural and

substantive due process rights in two ways: first, DISD arbitrarily terminated her "based on

conduct [that] she had no notice was a violation of policy" or a "terminable offense," Am.

Compl. (ECF No. 17) at 11, at ¶ 4.21; and, second, DISD failed "to provide [her] with a full

due process hearing prior to her termination," *id.* at 12, ¶ 4.24.  DISD maintains, *inter alia*,

that Dr. Anderton has failed to allege a deprivation of her Fourteenth Amendment procedural

or substantive due process rights because she has not demonstrated that she had a

constitutionally protected right to which the Fourteenth Amendment applied.

-15-

"To state a Fourteenth Amendment due process claim under § 1983, 'a plaintiff must first identify a protected life, liberty or property interest and then prove that governmental action resulted in a deprivation of that interest'" without due process of law. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (quoting *Baldwin v. Daniels*, 250 F.3d 943, 946 (5th Cir. 2001) (per curiam)). The court addresses whether the amended complaint alleges that Dr. Anderton had a liberty and/or property interest.

1

"Liberty interests come from two sources: (1) 'the Constitution itself, by reason of guarantees implicit in the word "liberty"'; and (2) 'an exception or interest created by state law or policies.'" *Adams v. City of Harahan*, 95 F.4th 908, 913 (5th Cir. 2024) (citation omitted). The meaning of the term "liberty" is broad, *see Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 571 (1972), and a liberty interest arises when an employee is "discharged in a manner that creates a false and defamatory impression about [her] and thus stigmatizes [her] and forecloses [her] from other employment opportunities."[6] *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (internal quotation marks and citation omitted).

The Fifth Circuit employs a seven-element "stigma-plus-infringement" test to "determine whether § 1983 affords a government employee a remedy for depravation of

---

[6]Dr. Anderton's amended complaint and response to DISD's motion do not make clear what liberty interest she asserts. The court will therefore assume that she is claiming that DISD deprived her of her liberty when it "discharge[d] [her] under circumstances that will do special harm to [her] reputation and fail[ed] to give [her] an opportunity to clear [her] name[.]" *Rosenstein v. City of Dallas*, 876 F.2d 392, 395 (5th Cir. 1989).

-16-

liberty without notice or an opportunity to clear [her] name." *Id.* Dr. Anderton must demonstrate that "(1) [she] was discharged; (2) stigmatizing charges were made against [her] in connection with the discharge; (3) the charges were false; (4) [she] was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) [she] requested a hearing to clear [her] name; and (7) the employer denied the request." *Id.*

The amended complaint does not state a plausible procedural or substantive due process claim based on this liberty interest because it fails to allege facts that support all seven elements of the Fifth Circuit's "stigma-plus-infringement" test. *See Clemmer v. Irving Indep. Sch. Dist.*, 2014 WL 2475924, at *2-3 (N.D. Tex. June 3, 2014) (Fitzwater, C.J.) (dismissing school teachers' deprivation of liberty claim because they failed to allege elements of the stigma-plus-infringement test). Construing the amended complaint in Dr. Anderton's favor, the court holds that it pleads facts indicating that some, but not all, of the elements required to plead a liberty interest in her employment have been satisfied. For example, Dr. Anderton alleges that DISD's discharge was stigmatizing to the extent that DISD reported her alleged misconduct to the Texas Board for Educator Certification and her teaching certificate shows that she is under investigation, which makes employment "exceeding unlikely, if not impossible." Am. Compl. (ECF No. 17) at 4, ¶ 3.8. The amended complaint also alleges that the charges were false to the extent that the PSO Report on which DISD based the charges contained factual inaccuracies, and that she was not provided notice or an opportunity to be heard *before* DISD notified her that the process of her termination

had begun on November 17, 2023.  The amended complaint also alleges that DISD reported her charges to the Texas Board for Educator Certification, and that she appealed her termination to contest the charges in the PSO Report by filing a grievance.  *See Rosenstein v. City of Dallas*, 876 F.2d 392, 396 (5th Cir. 1989) (acknowledging that a "request to participate in established grievance, appeals, or other review procedures to contest defamatory charges was sufficient to state a request for a name-clearing hearing").

Assuming *arguendo* that the amended complaint adequately alleges the first six elements of the Fifth Circuit's "stigma-plus-infringement" test, it does not plead factual content that would permit the court to draw the reasonable inference that DISD denied her the opportunity to clear her name.  The amended complaint alleges that DISD held a "Level II hearing" to address her Dr. Anderton's grievance, and DISD acknowledges in its brief that she "took advantage of [the] grievance process."  D. Br. (ECF No. 20) at 21.  The amended complaint appears to allege that the "Level II hearing" was inadequate because it occurred "after-the-fact" and Dr. Anderton had the burden "to show that DISD's actions were unlawful, unconstitutional, or arbitrary and capricious."  Am. Compl. (ECF No. 17) at 12, ¶ 4.23.  The court cannot reasonably infer that DISD denied Dr. Anderton a meaningful opportunity to clear her name simply because it did not provide her the hearing that she desired or that it denied her grievance on the merits.  *See Clemmer*, 2014 WL 2475924, at *4 (concluding that the school teachers' amended complaint did not indicate that they were denied a meaningful opportunity to clear their names when the school district provided them "Level II" and "Level III" hearings).

Consequently, for the reasons stated above, Dr. Anderton's amended complaint fails to plausibly allege a deprivation of a liberty interest.

2

Property interests are created and "their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Roth*, 408 U.S. at 577. The sufficiency of the claim to a property interest in employment, whether created by statute, contract, or implied contract, must be decided by reference to state law. *See Bishop v. Wood*, 426 U.S. 341, 344 (1976). The court therefore looks to Texas law to see whether the employee in question—in this case a DISD employee—possessed a legitimate claim of entitlement to her job, and examines existing rules or understandings that stem from state law. *See Roth*, 408 U.S. at 577; *Batterton v. Tex. Gen. Land Off.*, 783 F.2d 1220, 1222 (5th Cir.1986). Because Texas follows the "employment at will" doctrine, to establish a constitutionally protected property interest, Dr. Anderton must show that she had an employment contract limiting DISD's right to terminate her employment at will. *Schultea v. Wood*, 27 F.3d 1112, 1116 (5th Cir.1994), *on reh'g on other grounds*, 47 F.3d 1427 (1995) (en banc); *see also Evans v. City of Dallas*, 861 F.2d 846, 849 (5th Cir. 1988) (stating that "the law is well-settled that where state or local regulations indicate that an employee may be terminated only for cause, that employee has a property interest in his continued employment").

The amended complaint does not plead a plausible procedural or substantive due process claim based on a property interest in Dr. Anderton's continued employment because

it fails to allege any facts that indicate she could only be terminated for cause. Dr. Anderton alleges that she has a "protected property interest in her ongoing employment," but fails to state any facts that enable the court to draw the reasonable inference that DISD intended to be bound in her employment contract not to terminate her except for cause. Dr. Anderton has also failed to respond to DISD's assertion that she failed to state a property interest on which to base her procedural and substantive due process claims. Thus Dr. Anderton's continual employment at DISD gave her no more than a subjective expectation of continued employment, which is insufficient to create a constitutionally protected property interest necessary to invoke the Fourteenth Amendment's due process provisions. *See Wells v. Doland*, 711 F.2d 670, 675 (5th Cir. 1983).

Accordingly, for the reasons explained, the court concludes that Dr. Anderton's amended complaint fails to plausibly allege a deprivation of a property interest.

Because Dr. Anderton has not plausibly alleged a constitutional violation based on a liberty or property interest, the court grants DISD's motion to dismiss her Fourteenth Amendment procedural and substantive due process claims under § 1983.

C

Dr. Anderton also alleges that DISD violated her First Amendment rights by terminating her in retaliation for her conversation with two students regarding their well-being and matters of public concern. DISD maintains that the amended complaint does not allege that Dr. Anderton spoke with the two students regarding "CPS overreach, and the difficulties faced by immigrants," even if these topics do constitute matters of public concern,

or that speech on these topics motivated her termination.

The First Amendment has been held to apply to the states through the Fourteenth Amendment's Due Process Clause and protects "[s]peech by citizens on matters of public concern[.]" *Lane v. Franks*, 573 U.S. 228, 235 (2014). "[P]ublic employees do not renounce their citizenship when they accept employment," *id.* at 236, and they cannot be discharged, disciplined, or punished for exercising their right to free speech, *see Page v. DeLaune*, 837 F.2d 233, 237 (5th Cir. 1988).

"To prove a claim of First Amendment retaliation, a plaintiff must establish that (1) [she] suffered an adverse employment decision; (2) [her] speech involved a matter of public concern; (3) [her] interest in commenting on matters of public concern . . . outweighs the [d]efendant's interest in promoting efficiency; and (4) [her] speech motivated the adverse employment decision." *Haverda v. Hays County*, 723 F.3d 586, 591 (5th Cir. 2013) (fourth alteration in original) (internal quotation marks omitted) (quoting *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 601 (5th Cir. 2001)).

Whether the speech at issue involves a matter of public concern is a question of law. *See, e.g.*, *James v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "When employee expression cannot be fairly considered as relating to any matter of political, social, or other concern to the community, government officials should enjoy wide latitude in managing their offices, without intrusive oversight by

the judiciary in the name of the First Amendment." *Id.* at 146.

Dr. Anderton alleges that: (1) she was terminated in retaliation for her conversation with two students; (2) she "spoke with these students in an effort to protect their welfare, and from concern for their well-being" after the students "had been wrongfully removed from their home"; (3) she "acted to help the students and their family," who were close family friends; and (4) "CPS overreach, and the difficulties faced by immigrants" are matters of public concern. Am. Compl. (ECF No. 17) at 13, ¶ 4.29.

The amended complaint does not state a plausible violation of Dr. Anderton's First Amendment rights because it fails to allege facts that enable the court to draw the reasonable inference that she spoke with the two students on a matter of public concern. Assuming *arguendo* that "CPS overreach, and the difficulties faced by immigrants" are matters of public concern, the allegations of the amended complaint only enable the court to draw the reasonable inference that Dr. Anderton spoke with the students privately, not that she spoke publicly about their plight. This indicates that she spoke with the two students on a matter of personal, not public, concern. The court therefore holds that Dr. Anderton's amended complaint fails to plead a plausible First Amendment violation.

Accordingly, the court grants DISD's motion to dismiss Dr. Anderton's First Amendment claim under § 1983.[7]

_____

[7]The court declines to address whether Dr. Anderton's amended complaint plausibly pleads that an official policy or custom of DISD caused the purported constitutional violations because Dr. Anderton must first plausibly plead the other required elements for a § 1983 claim. *See Peterson*, 588 F.3d at 844.

V

Although the court is granting DISD's motion, it will permit Dr. Anderton to replead.

> In view of the consequences of dismissal on the complaint alone, and the pull to decide cases on the merits rather than on the sufficiency of pleadings, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal.

*In re Am. Airlines, Inc., Privacy Litig.*, 370 F.Supp.2d 552, 567-68 (N.D. Tex. 2005) (Fitzwater, J.) (alteration omitted) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)).  It is not clear that all of the defects in the amended complaint are incurable, and Dr. Anderton has requested leave to amend.

* * *

For the reasons explained, the court grants DISD's motion to dismiss but also grants Dr. Anderton leave to file a second amended complaint, which must be filed within 28 days of the date this memorandum opinion and order is filed.

**SO ORDERED**.

August 6, 2024.

SIDNEY A. FITZWATER
SENIOR JUDGE

-23-